**UNITED STATES of America,**
**Plaintiff-Appellant,**

v.

**PEOPLES NATIONAL BANK OF CHICAGO, an Illinois Corporation,**
**Defendant-Appellee.**

**No. 12092.**

United States Court of Appeals
Seventh Circuit.

Nov. 29, 1957.

Paul A. Sweeney, Chief, Appellate Section, Peter H. Schiff, Atty., U. S.

Dept. of Justice, Washington, D. C., Robert Tieken, U. S. Atty., Chicago, Ill., George Cochran Doub, Asst. Atty. Gen., Geo. S. Leonard, Acting Asst. Atty. Gen., for appellant.

Paul Peter Black, Lawrence S. Adler, Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and SCHNACKENBERG and PARKINSON, Circuit Judges.

SCHNACKENBERG, Circuit Judge.

An action brought in the district court by plaintiff against defendant, was tried, without a jury, on a complaint and an answer. The court resolved the issues in favor of defendant and dismissed the complaint. This appeal followed.

We now state the relevant facts.

Joe Boyd, a soldier in the United States Army, at all times relevant herein was married to Genevieve Boyd. He designated her as his wife to receive a dependency allotment, giving her address as 2500 West Warren Boulevard, Chicago, Illinois. In March 1951 he informed Genevieve that she would receive these allotment payments. Ten allotment checks, each for $85, issued monthly from March 6, 1951 through December 13, 1951, were drawn for that purpose and were mailed to her at the address given. Genevieve was not living there when the checks arrived, but Mrs. Cecile G. Smith, who had lived with Boyd at that address, as his wife, was still living there when the checks arrived. At all times relevant in this case, Cecile had a living husband, who was not Joe Boyd. The landlord at that address, Polk A. Lucas, believed that Joe and Cecile were legally married. In order to avail herself of the opportunities presented by the arrival of these checks, Cecile endorsed the reverse side of each check by writing "Genevieve Boyd" thereon, and Lucas placed his signature below each of her endorsements and negotiated the checks at a currency exchange, which in turn endorsed them to the order of any bank or banker. Thereafter defendant endorsed the checks guaranteeing prior endorsements and in due course received payment through the Federal Reserve Bank.

Genevieve never endorsed these checks, never authorized any other person to endorse them, and never received any of the proceeds thereof.

About January 28, 1952, Genevieve notified plaintiff that she had failed to receive her allotment checks. About October 4, 1952, plaintiff notified defendant of the alleged forgeries of the payee's endorsements and demanded reimbursement, which was refused.

After learning from Genevieve that she had not received her checks, plaintiff ascertained the identity and whereabouts of Cecile and on November 21, 1952 she expressed in writing a desire to make full restitution "to the United States of America or to such endorser or endorsers as may have made or may make reimbursement to the United States of America" and authorized the Treasurer of the United States to use any reimbursement payments that might be made to reimburse the United States or such endorsers as made or might make refunds to the United States. She fulfilled her desire in this respect by paying plaintiff a total of $5.

The district judge, who tried the case without a jury, made findings of fact, including the following:

"17. There was no course of dealing between Cecile G. Smith and plaintiff, United States of America, to cause agents of the latter to believe that Cecile G. Smith, was, in fact, Genevieve Boyd, the wife of Joe Boyd, other than the fact that the checks were addressed to 2500 Warren Boulevard, Chicago, Illinois, being the address where Cecile G. Smith was living as the wife of Joe Boyd, and held herself out as the wife of Joe Boyd, and was held out by Joe Boyd as his wife."

Defendant makes no attack upon the correctness of this finding. The district judge also found that the United States was negligent and unreasonable in noti-

fying defendant of the alleged forgeries and that this caused harm and damage to the bank. There were no specific findings as to how the bank was damaged.

■ 1. Defendant contends that it was damaged by "the late notice and lapse of time between the issuance of the series of checks in question, and the time the said defendant was notified by the claim of the Government." There is, however, no evidence in the case showing that it was so damaged. In Clearfield Trust Co. v. United States, 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838, it was held that any damage alleged to have been occasioned by delay in giving notice of forgery must be established and not left to conjecture.

■ 2. Defendant says that in this case there is no forgery. Cecile cashed the allotment checks by endorsing them with the name of another person who had been named as payee therein. She was not authorized by Genevieve to do so. That is a forgery.

■ 3. Defendant contends that, when plaintiff entered into an agreement for restitution by Cecile without the knowledge and consent of defendant, it ratified the alleged forgeries and relieved defendant as a guarantor. The facts do not show a ratification or an intent to ratify.

■■ 4. Defendant argues that under the circumstances of this case, Cecile G. Smith, the mistress of Joe Boyd, was intended by both the government and Joe Boyd to receive the checks in question and to make use of the proceeds thereof and that therefore the district court's order should be affirmed. Defendant relies, in that respect, on United States v. First National Bank & Trust Co. of Asheville, D.C., 92 F.Supp. 356. However, in that case, Elkins, a soldier, had entered the army following his separation from his wife, Marie Price. For some time prior to his induction he had lived with a widow, *Daisy Marie* Bennett, as husband and wife, which relationship continued all during his army career. On his induction Elkins applied for an allotment for his wife and reported in his application therefor that her name was *Daisy Marie* Elkins. Allotment checks were made out to *Daisy Marie* Elkins. *Daisy Marie* Bennett received these checks, and endorsed and cashed them at a bank, which through regular banking channels caused them to be paid by the Treasurer of the United States. The United States sued the bank to recover the payments. The court held in favor of the bank, saying, 92 F.Supp. at page 359:

"* * * Naturally the signature to each of the checks that were issued under the allotment by the soldier represent the *genuine signature of the person to whom they were delivered*. The checks apparently were delivered to her and intended for her, and though they were voidable for fraud, *she was the payee in the checks.* * * *"
(Italics for emphasis.)

In the case before us the facts are diametrically opposite. The endorsements put on the checks by Cecile G. Smith were not the signatures of Genevieve Boyd, the payee named in the checks. They were payable to Genevieve Boyd and no one else. The court, 92 F.Supp. at page 359, relied on several cases, including United States v. Liberty Ins. Bank, D.C., 26 F.2d 493. In the latter case, 26 F.2d at page 494, the court said:

"* * * when the Liberty Insurance Bank indorsed the check guaranteeing all prior indorsements, it simply guaranteed that the indorsement of the name 'Hattie Price Dunn' on the back of the check was the indorsement of the person named in the face of the check. It was in no sense any guaranty as to her legal status. The petition does not question, and it therefore must be treated on this demurrer as admitted, that the person named as the payee in the check, and going under the name of 'Hattie Price Dunn,' was the person who indorsed the

name 'Hattie Price Dunn' on the back thereof. Therefore the indorsement of the name 'Hattie Price Dunn' on the back of the check was not a forgery."

In the case at bar, the endorsement on the back of the checks was not the endorsement of the person named in the face of the checks. Hence, there was a breach of defendant's guaranty.

Moreover, as the district court found, there had been no course of dealing between Cecile G. Smith and plaintiff to cause its agents to believe that Cecile Smith was, in fact, Genevieve Boyd, the wife of Joe Boyd, other than the fact that checks were addressed to 2500 Warren Boulevard, Chicago, Illinois.

For the reasons hereinabove set forth, the order of the district court dismissing the complaint is reversed and this cause is remanded to that court with directions to enter judgment for plaintiff.

Reversed and remanded with directions.